**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 11, 2018[*]
Decided May 11, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 17-2552

| | |
|---|---|
| DAVID R. DYSON, | Appeal from the United States District |
|     *Plaintiff-Appellant,* | Court for the Northern District of Indiana, |
| | Hammond Division. |
|     *v.* | |
| | No. 2:14-CV-389 |
| MEGAN J. BRENNAN, Postmaster General, | |
|     *Defendant-Appellee.* | Paul R. Cherry, |
| | *Magistrate Judge*. |

## O R D E R

David Dyson, an African-American mechanic for the Postal Service, sued the Service under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e—2(a)(1), 3(a). He asserts that the Service discriminated against him based on his race and sex by cancelling an overtime shift and harassing him and that it retaliated against him for filing a charge of discrimination. The district court entered summary judgment for the

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Postal Service. Because a reasonable factfinder could not conclude that Dyson's race or sex motivated the loss of an overtime shift or any harassment that he says he experienced, or that the Service retaliated against him for filing his charge, we affirm.

Dyson's regular shift ran from Tuesdays through Saturdays at the Postal Service's distribution center in Gary, Indiana. The Service cancelled Dyson's overtime shift scheduled for a Sunday in the fall of 2012 after he took unscheduled leave on the previous Friday and Saturday. The collective bargaining agreement provided that employees on leave must be passed over for overtime. Weeks later, a white mechanic, Paula Garton, took two unscheduled days off before returning to work for a scheduled Saturday shift and then a Sunday overtime shift. Dyson grieved the cancellation of his overtime shift, comparing his circumstances to Garton's. (Regarding the cancelled shift, Dyson also filed with the Equal Employment Opportunity Commission a race and sex discrimination charge, which he told his supervisor, Bernyce Thompson, about.) After he filed his grievance, the president of Dyson's local union opined that Dyson's and Garton's different treatment reflected "feminist favoritism." The grievance was settled with Dyson receiving an overtime shift on a day of his choosing.

During the three years after his overtime shift was cancelled, Dyson experienced incidents that he believes reflect a work environment that was sexually and racially hostile and retaliatory. He mentions two of these incidents on appeal. First, in 2014 Thompson told Dyson that he was on a list of workers required to provide a medical note upon returning from sick leave. Second, over a year later, Dyson took three days' sick leave without providing a medical note by the end of the third sick day, as Thompson had directed. (He did so five days later.) Thompson designated him as absent without leave, so the Service did not pay him for these days. Dyson filed a grievance and eventually was paid for that time.

This litigation followed, leading to two rulings that Dyson contests on appeal. The first ruling came after the Postal Service answered the complaint. It admitted that it cancelled Dyson's, and not Garton's, overtime shift in the fall of 2012, but it denied that sex or race motivated the cancellation. Dyson responded by moving for judgment on the pleadings, *see* FED. R. CIV. P. 12(c). He argued that, by this admission, the Service "confess[ed] that plaintiff Dyson was discriminated against based upon his race and sex and in violation of Title VII." A magistrate judge, presiding by consent, *see* 28 U.S.C. § 636(c)(1), denied the motion, ruling that the pleadings reflected a genuine issue of material fact regarding the Service's motive for cancelling his overtime shift.

The second ruling is the magistrate judge's decision to grant the Postal Service's motion for summary judgment. The judge ruled that no reasonable factfinder could conclude that Dyson's race or sex caused the Postal Service to cancel his overtime shift. Dyson and Garton were not similarly situated under the terms of the union contract, the judge explained, because Garton, unlike Dyson, had worked on the day before her overtime shift. Regarding the hostile-work-environment claim, the judge reasoned that no evidence suggested that the incidents Dyson identified were objectively offensive or linked to his race or sex. And on the retaliation claim, the judge concluded that Dyson suffered no material adverse action.

On appeal Dyson first challenges the denial of his motion for judgment on the pleadings. He says that the Postal Service's answer shows that the Service discriminated against him based on his race and sex because it admitted that it cancelled his overtime shift but not Garton's. He further contends that the Service violated Federal Rule of Civil Procedure Rule 8(b) by admitting part of one allegation in his complaint but not another part. Both arguments are wrong. The judge properly denied Dyson's motion because the Postal Service denied that sex or race motivated the divergent treatment of Dyson's and Garton's overtime schedules. Thus, the pleadings do not show that the Postal Service discriminated against Dyson. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993); *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). Further, the Postal Service's answer complied with Rule 8(b) by meeting the requirements of its fourth subprovision: "A party that intends in good faith to deny only part of an allegation must admit the part that is true and deny the rest." FED. R. CIV. P. 8(b)(4).

Dyson also contests the entry of summary judgment on his claims that the Service discriminated against him based on his race and sex by cancelling his overtime shift. He offers three arguments. First, he repeats that the Service cancelled his overtime shift but not Garton's, and he maintains that they were similarly situated because they were both mechanics in the Gary facility's maintenance department and took unscheduled days off before scheduled overtime shifts. Second, he contends that the favorable settlement of his grievance is evidence of discrimination. Third, he argues that his union president's assertion that "feminist favoritism" explained Garton's opportunity to work overtime would allow a reasonable factfinder to find discrimination.

None of these arguments undermines the entry of summary judgment. First, Garton is not a suitable comparator to Dyson. Unlike Dyson, Garton was not "on leave" the day preceding her overtime shift, so the part of the union contract requiring that the Postal Service pass over for overtime those on leave did not apply to her as it did to him. *See David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225–27 (7th Cir. 2017). Second, the settlement of Dyson's grievance was not accompanied by any explanation, so a factfinder could only speculate whether the settlement is evidence that race or sex animus motivated the Service's cancellation of his overtime shift. Finally, the lay opinion of Dyson's union representative is inadmissible under Federal Rule of Evidence 701 because the record contains no basis for his opinion.

Dyson next addresses his remaining claims about harassment and retaliation. He asserts that a reasonable factfinder could conclude that the Postal Service harassed him by requiring medical documentation for his sick-leave absences. But the district court correctly ruled that Dyson presented no evidence that this requirement was based on his race or sex. *See Poullard v. McDonald*, 829 F.3d 844, 859 (7th Cir. 2016). That leaves his retaliation claim. Dyson contends that, by designating him as absent without leave during his three sick days (after he did not timely supply a medical note), Thompson retaliated for the EEOC charge that he filed three years earlier. But no reasonable factfinder could conclude Dyson's EEOC charge motivated Thompson's action. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). The three-year time span is too substantial to infer retaliation. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001) (concluding that 20-month gap between protected activity and adverse action "suggests, by itself, no causality at all"). Moreover, the Postal Service's unrebutted reason for treating him as absent without leave—that he did not turn in a medical note by the time Thompson specified—is not "fishy enough to support an inference that the real reason must be discriminatory." *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011).

Dyson makes two final arguments. First, he contends that the magistrate judge did not draw all reasonable inferences in his favor when ruling on the motion for summary judgment. But our review is de novo, *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087 (7th Cir. 2018), and we have drawn all reasonable inferences in Dyson's favor without deferring to the judge's interpretation of the record. Second, he asserts that the Postal Service did not respond to his statement of additional facts and therefore the judge erred by not deeming them "admitted." But Dyson did not provide a "Statement of Genuine Disputes," as required by the district court's Local Rule 56–1(b)(2).

Consequently, the judge did not abuse his discretion in choosing to consider only those facts in Dyson's submission that were supported by the record. "How strictly to apply a local rule is left to the district court's sound discretion." *Hummel v. St. Joseph Cty. Bd. of Comm'rs*, 817 F.3d 1010, 1017 (7th Cir. 2016).

We have considered Dyson's other arguments, and none has merit.

AFFIRMED